UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROBERT A. WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 3:13-CV-1020 JD |
| | ) |
| SGT. BERRY, *et al.,* | ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

Robert A. Williams, a *pro se* prisoner, filed a complaint under 42 U.S.C. § 1983. (DE 1.) The court must review a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 603. Thus, a "plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to [him] that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). Nevertheless, the court must bear in mind that a *pro se* complaint is entitled to liberal construction, "however inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Here, Williams is complaining about an injury he suffered while working in the kitchen at Westville Correctional Facility ("Westville"). He claims that in early May 2013, he noticed that one of the tables in his work area had "jagged and sharp edges exposed," which in his view created a

hazardous condition. He complained to the kitchen supervisor, Mr. Turnipseed (first name unknown), whose response was, "Do I look like fucking maintenance, ain't shit I can do about that, I pass out food, duh." (DE 1 at 6.) He then filed a grievance about the table, but no one responded to it. On May 20, 2013, Williams was working in the kitchen when he caught his arm on the table, "ripping a deep gash into plaintiff's arm approximately 5.5 cm x 1.5 cm." (*Id.*) He immediately went to one of his supervisors, Mr. Hines (first name unknown), to report the injury. According to Williams, Mr. Hines "hysterically yelled" for one of the correctional staff members, Sgt. Berry (first name unknown). Sgt. Berry was apparently some distance away, and Mr. Hines had to call for him five or six times. He eventually responded, asking, "What the fuck do you want?" He then examined Williams's injury, which required Williams to remove the oven mitt he was using to stop the bleeding. Sgt. Berry asked Mr. Hines why he had not called him over the radio, to which Mr. Hines responded that he did not have a radio. At this point Lt. Battles (first name unknown) approached, and also looked at Williams's arm. He claims Lt. Battles made a joking comment that Williams should try not to "bleed in my chow hall." Lt. Battles, Sgt. Berry, and Mr. Hines then discussed what should be done to obtain medical care for Williams, since they were in the middle of serving a meal to inmates. It was decided that an Lt. Battles would call for an escort to take Williams to urgent care. Officer Willis (first name unknown) arrived "minutes later," and took Williams to urgent care, where he received 11 stitches to close the wound on his arm. Williams claims medical staff also gave him a pass which excused him from having to go to work for the next three days so that he could rest. He claims he told Officer Dilworth (first name unknown) several times that he had a pass, but the officer refused to call anyone in the "count room" to check on the pass, and instead responded, "I don't give a fuck about your arm, do I look like a nurse? . . . [G]et your ass to the kitchen." Williams

2

claims he was forced to work in the kitchen for the next three days even though he had a medical pass, which caused him pain and suffering.

Williams first claims that several of the defendants are liable for failing to maintain a "hazard free work environment." To state a claim under the Eighth Amendment, an inmate must satisfy both an objective and subjective prong. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation or condition is "sufficiently serious" as to have resulted in "the denial of the minimal civilized measure of life's necessities." *Id.* "The Eighth Amendment forbids knowingly compelling an inmate to perform labor that is beyond the inmate's strength, dangerous to his or her life or health, or unduly painful." *Smith v. Peters*, 631 F.3d 418, 420 (7th Cir. 2011) (internal citation omitted). Failure to provide a prisoner with necessary protective gear or exposing him to unnecessary risk in a prison job can therefore violate the Eighth Amendment. *Id.* (collecting cases).

To satisfy the subjective prong, the prisoner must show that the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834. This is a high standard. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted). Deliberate indifference is "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992).

3

Here, Williams is suing nine different defendants, but the only individual alleged to have personal knowledge of the condition of the table prior to Williams's injury was Mr. Turnipseed, the kitchen supervisor. He alleges that he alerted Mr. Turnipseed to this hazard, but Mr. Turnipseed rudely brushed off his complaint without passing it along to the appropriate personnel or otherwise taking any steps to protect inmates from injury. As a result, he suffered a serious cut to his arm. Giving Williams the inferences to which he is entitled at this stage, he has alleged enough to proceed further against Mr. Turnipseed.

Williams also names Mr. Turnipseed's employer, Aramark Company, a private company which provides meals at the prison. A private company may be held liable for constitutional violations when it performs a state function. *See West v. Atkins*, 487 U.S. 42 (1988). However, there is no general supervisory liability under 42 U.S.C. § 1983, and Aramark cannot be held liable simply because it employs Mr. Turnipseed. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). A private company performing a state function can also be held liable to the same extent as a state actor under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at prison). Here, however, Williams does not allege, nor can it be plausibly inferred, that Aramark had an unconstitutional practice or policy that caused his injury. Rather, he alleges that his injury occurred because Mr. Turnipseed failed to address the problem when he alerted him to it. Williams has not alleged a plausible constitutional claim against Aramark, and so this defendant will be dismissed. In a similar vein, Williams mentions an unnamed maintenance employee, referred to as "John Doe #3," but he does not allege that this individual had any advance knowledge of the condition of the table or other personal involvement in these events. *See Burks v.*

4

*Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) (under 42 U.S.C. § 1983 government actors can be held liable only for their "own misdeeds . . . not for anyone else's."); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 789 (7th Cir. 1995) (observing that a defendant must have both the subjective knowledge and the authority over the challenged issue to be held liable for deliberate indifference). Accordingly, he will also be dismissed as a defendant.

Williams next alleges that several of the defendants were deliberately indifferent to his medical needs. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjecting component by showing: (1) he had an objectively serious medical need; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer,* 511 U.S. at 834. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to his medical needs. *Farmer*, 511 U.S. at 834. Deliberate indifference is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane*, 959 F.2d at 677. Incompetence, negligence, or even gross negligence do not suffice. *Ortiz v. Webster,* 655 F.3d 731, 736 (7th Cir. 2011)*; Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004). In other words, "the Eighth Amendment does not codify common law torts." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). When an inmate has received some form of treatment for a medical condition, to establish deliberate indifference he must show that the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Id.* Furthermore,

inmates are not entitled to demand specific medical treatment, nor are they entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Maggert v. Hanks*, 131 F.3d 670, 671-72 (7th Cir. 1997) ("A prison is not required by the Eighth Amendment to give a prisoner care that is as good as he would receive if he were a free person, let alone an affluent free person.").

Here, it is apparent from the complaint that Williams received medical treatment for the cut on his arm, and he does not name any medical staff as defendants, nor does he complain about the quality of the care that he received. Instead, his complaint is that Sgt. Berry and Lt. Battles did not act quickly enough in taking him to the medical unit when he cut himself. A delay in providing proper medical care can be actionable under the Eighth Amendment when it exacerbates the plaintiff's medical problem or otherwise causes him injury. *Arnett*, 658 F.3d at 752-53. Here, Williams estimates that it was approximately 30 minutes from the time he cut himself to the time he was treated by medical staff in urgent care. This was not a significant delay under the circumstances, and is perhaps shorter than a free person might experience waiting in a hospital emergency room for medical care. *See Knight v. Wiseman,* 590 F.3d 458, 466 (7th Cir. 2009) (no Eighth Amendment violation where inmate received medical care for shoulder injury within two and half hours, since "[a]n unincarcerated individual may well consider oneself fortunate if he receives medical attention at a standard emergency room within that short of a period of time."); *see also Curry v. St. Joseph Hospital*, No. 1:12cv140-PS (N.D. Ind. order dated May 4, 2012) (citing study and noting that average emergency room visit takes approximately four hours).

Although it might have been possible for staff to act quicker, Williams has not alleged anything approaching deliberate indifferent to his medical needs. Instead, when custody staff was alerted to his injury, they took immediate steps to assess the seriousness of the injury and then to

6

determine how best to obtain medical care for Williams given that the cafeteria was full of inmates and staff could not leave their posts. Sgt. Berry called for an escort, who arrived "minutes later" and took Williams immediately to urgent care. Williams has not alleged an exacerbation of his injury or similar problems because of the 30 minutes it took for him to be seen by medical staff. Instead, he alleges that once he arrived at urgent care the nurses stitched his wound and released him back to his cell. Williams appears upset about the insensitive language used by Sgt. Berry and Lt. Battles, but rude language—though unprofessional—does not give rise to a constitutional claim. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (rude language or verbal harassment by a state actor "while unprofessional and deplorable, does not violate the Constitution."). Accordingly, Sgt. Berry and Lt. Battles will be dismissed as defendants.

As to Officer Dilworth, Williams claims the officer forced him to work even though he had a painful injury to his arm. He further alleges he told Officer Dilworth repeatedly that he had been given a pass from medical staff, but Officer flatly refused to check on this and essentially told Williams he did not care about his injury. Although as non-medical staff Officer Dilworth might ordinarily be entitled to defer to medical staff regarding Williams's care, here Williams alleges that Officer Dilworth actually *prevented* the orders of medical staff from being carried out, even though a quick check would have revealed the existence of his medical pass. The complaint can be read to allege that having to work with his injury caused Williams undue pain and suffering. Giving Williams the inferences to which he is entitled at this stage, he has plead enough to proceed on a claim of deliberate indifference against Officer Dilworth.

Williams also mentions two unnamed "count room" employees, John Does #1 and #2, as well as Capt. Frierson (first name unknown), who supervises correctional staff, apparently in

7

connection with his claim about having to report to work. However, Williams does not allege, nor is there a basis to plausibly infer, that any of these individuals were personally aware of and turned a blind eye to Williams's medical issues. They cannot be held vicariously liable for Officer Dilworth's refusal to check on Williams's medical pass. *See Burks*, 555 F.3d at 595. Accordingly, they will be dismissed as defendants.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Mr. Turnipseed in his individual capacity for monetary damages for deliberate indifference to the plaintiff's health and safety in violation of the Eighth Amendment;

(2) GRANTS the plaintiff leave to proceed against Officer Dilworth in his individual capacity for monetary damages for deliberate indifference to the plaintiff's medical needs in violation of the Eighth Amendment;

(3) DISMISSES Sgt. Berry, Lt. Battles, John Does #1-3, Capt. Frierson, and Aramark Company as defendants;

(4) DISMISSES any and all other claims contained in the complaint;

(5) DIRECTS the U.S. Marshals Service to effect service of process on Mr. Turnipseed and Officer Dilworth; and

(6) ORDERS Mr. Turnipseed and Officer Dilworth to respond, as provided for in the FEDERAL RULES OF CIVIL PROCEDURE, only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

ENTERED: November 27, 2013

                                                                    /s/ JON E. DEGUILIO
                                              Judge
                                              United States District Court